STEIN & FLUGGE, LLP
VALERIE V. FLUGGE (111553)
vflugge@steinflugge.com
DILAN A. ESPER      (178293)
dilanesp@aol.com
6100 Wilshire Blvd., Suite 1250
Los Angeles, CA 90048
(323) 936-1455 (telephone)
(323) 936-1459 (fax)

Attorneys for Plaintiff Allumination Filmworks, LLC

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLUMINATION FILMWORKS, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN MAURICE DOYLE, ALFRED PUBLISHING CO., INC.. a New York Corporation, and Does 1-10,<br><br>Defendants. | Case No. **CV11-01945** MMM(PLA)<br><br>COMPLAINT FOR:<br><br>(1) COPYRIGHT INFRINGEMENT;<br>(2) BREACH OF CONTRACT; and<br>(3) DECLARATORY JUDGMENT<br><br>DEMAND FOR JURY TRIAL |

PLAINTIFF ALLEGES:

### JURISDICTION AND VENUE

1.      Jurisdiction is proper for this action under 28 U.S.C. §§ 1331, 1338(a), and 1367(a).  Venue is proper in this district under 28 U.S.C. § 1391(b)(1) & (2).

STEIN & FLUGGE, LLP
6100 Wilshire Blvd.
Suite 1250
Los Angeles, CA
90048-5107
(323) 936-1455

c:\javier\allumination\complaint

- 1 -

## THE PARTIES

2.     Plaintiff Allumination Filmworks, LLC ("Allumination") is a limited liability company organized under the laws of Delaware with its principal place of business in Santa Monica, California, and is the successor to Ardustry Home Entertainment, LLC ("Ardustry").  Allumination is engaged in the business of licensing entertainment product in the broadcast, satellite, cable and home video markets worldwide.

3.     On information and belief, Defendant John Maurice Doyle ("Doyle") is an individual residing in Studio City, California, who does business under the fictitious name of Green Monster Music.

4.     On information and belief, Defendant Alfred Publishing Co., Inc. ("Alfred") is a corporation organized under the laws of New York with a principal place of business in Van Nuys, California, and advertises itself as the world's largest educational music publisher.

5.     On information and belief, Defendants Does 1 through 10 are the alter egos of each of the named Defendants, with such unity of interest and ownership that to recognize their separate existence from the named Defendants would result in an injustice.

6.     On information and belief, Defendants Does 11 through 20 are the agents and/or representatives and/or licensees of each of the named Defendants and, at all relevant times, were acting on their behalf so as to be jointly and severally responsible for the conduct alleged herein.

STEIN & FLUGGE, LLP
6100 Wilshire Blvd.
Suite 1250
Los Angeles, CA
90048-5107
(323) 936-1455

COMPLAINT FOR: (1) COPYRIGHT INFRINGEMENT; (2) BREACH OF CONTRACT; and (3) DECLARATORY JUDGMENT

# FIRST CAUSE OF ACTION

## (17 U.S.C. §501 *et. seq.*)

## Copyright Infringement Against Doyle and Alfred

7.    Allumination incorporates by this reference the allegations in paragraphs 1 through 6 as though fully set forth herein.

8.    On information and belief, Doyle is the owner of the copyrights in five DVD instructional videos entitled *Monster Guitar Method Volumes 1 through 5* (copyright registrations PA0001236072, PA0001236076, PA0001236080, PA0001236078, and PA0001236077; hereinafter the "Videos"), which were written and produced by Doyle.

9.    In October 2004, by an agreement in writing, Doyle licensed to Ardustry the exclusive and irrevocable video and merchandising rights to exploit the Videos throughout the world for a term of seven years (the "Agreement").  A true and correct copy of the Agreement is attached hereto as **Exhibit A** and is incorporated by reference.

10.    In addition to the Agreement reciting that the license to Ardustry  was "irrevocable", the Agreement specifically provided that:  "No breach of this Agreement shall entitle [Doyle] to terminate or rescind the rights granted to [Ardustry] herein . . . it being understood that [Doyle's] sole remedy shall be the right to recover money damages with respect to any such breach." [¶31]

11.    The Agreement further provided that a party who contended that the other party was in breach was required to send a written notice within fifteen days of becoming aware of such breach and to give the other party fifteen days to cure such breach.  [¶25]

12.    The Agreement contained no requirement or restriction regarding how Ardustry could market or distribute the Videos (other than providing for an upper limit or "cap" on marketing and advertising expenses that could be incurred by Ardustry), and contained no benchmarks for performance by Ardustry.  The

STEIN & FLUGGE, LLP
6100 Wilshire Blvd.
Suite 1250
Los Angeles, CA
90048-5107
(323) 936-1455

c:\javier\allumination\complaint                              - 3 -

1  Agreement contained no requirement that Ardustry expend any minimum amount on
2  marketing the Videos.

3      13.    The Agreement provided that Ardustry would pay Doyle royalties based
4  on gross receipts received by Ardustry after deduction by Ardustry of a thirty-five
5  percent (35%) distribution fee and recoupment by Ardustry of its distribution
6  expenses [¶¶ 6, 9].  The Agreement did not require Ardustry to pay to Doyle any
7  advance against Doyle's royalties and did not guarantee that Doyle would receive
8  any minimum amount of royalties.

9      14.    The Agreement further provided: "In any legal action between the
10 parties for breach, or any action between the parties otherwise related to this
11 Agreement, the prevailing party shall be entitled to its attorneys' fees." [¶ 31]

12     15.    Ardustry, and subsequently Allumination as Ardustry's successor,
13 distributed the Videos with moderate success, including by engaging Defendant
14 Alfred as one of the distributors of the Videos.

15     16.    On September 6, 2007, Doyle repudiated the Agreement by purporting
16 to terminate it on the grounds that Allumination had failed to:  (1) perform "in terms
17 of sales and marketing"; (2) return phone calls; and (3) provide adequate
18 accounting.

19     17.    Doyle's purported termination of the Agreement was improper for each
20 of the following independent reasons: (1) the exclusive license to Ardustry,
21 Allumination's predecessor, was expressly irrevocable during the term of the
22 Agreement, and Doyle was expressly precluded by the Agreement from terminating
23 that exclusive license; (2) even if Doyle had the right to terminate the Agreement,
24 the grounds asserted by Doyle were not material breaches giving rise to a right to
25 terminate; and (3) even if Doyle had a right to terminate the Agreement and
26 Allumination had materially breached the Agreement, Doyle failed to comply with
27 the express conditions precedent to termination which required Doyle to give
28 Allumination prior written notice of its purported breach and to permit Allumination

STEIN & FLUGGE, LLP
6100 Wilshire Blvd.
Suite 1250
Los Angeles, CA
90048-5107
(323) 936-1455

COMPLAINT FOR: (1) COPYRIGHT INFRINGEMENT; (2) BREACH OF CONTRACT; and (3) DECLARATORY JUDGMENT

1   to cure its purported breach within the fifteen day time period provided in the
2   Agreement.

3       18.    On information and belief, the grounds asserted by Doyle to justify his
4   termination of the Agreement were mere pretexts; the real reason for Doyle's
5   repudiation was that Doyle decided that he could make more money by cutting
6   Allumination out of the picture and entering into direct agreements with the
7   distributors which Allumination had located and had licensed to distribute the
8   Videos.

9       19.    On information and belief, on or about June 9, 2008, Doyle entered into
10  a written agreement with Alfred, to which Allumination had previously authorized
11  distribution of the Videos, for Alfred to distribute the Videos, and Alfred thereafter
12  distributed the Videos and accounted directly to Doyle for the proceeds of that
13  distribution.

14      20.    The license by Doyle to Alfred and Doyle's and Alfred's distribution of
15  the Videos during the term of the Agreement infringed and continues to infringe
16  Allumination's rights as an exclusive licensee of the Videos under the U.S.
17  Copyright Act.

18      21.    On information and belief, the infringing acts of Doyle and Alfred were
19  willful within the meaning of 17 U.S.C. §504(c)(2).

20      22.    As a result of the aforesaid conduct of Doyle and Alfred, Allumination
21  has suffered actual damages and lost profits in an amount to be proven at trial.

22              **SECOND CAUSE OF ACTION**

23      **Breach of Contract Against Defendants Doyle and Does 1 through 20**

24      23.    Allumination incorporates by this reference the allegations in paragraphs
25  1 through 22 as though fully set forth herein.

26      24.    Doyle's termination/repudiation of the Agreement and his subsequent
27  license to Alfred of the rights to sell the Videos were material breaches of the
28  Agreement.

STEIN & FLUGGE, LLP
6100 Wilshire Blvd.
Suite 1250
Los Angeles, CA
90048-5107
(323) 936-1455

c:\javier\allumination\complaint          - 5 -

25.    Allumination has performed all of its obligations under the Agreement or has been excused from doing so.

26.    As a proximate result of Doyle's conduct, Allumination has been damaged in an amount to be proven at trial, including the lost distribution fees resulting from Doyle's repudiation of the Agreement and from sales made by Doyle or his purported licensees that, but for Doyle's repudiation, could and would have been made by Allumination or its licensees.

## THIRD CAUSE OF ACTION

### Declaratory Judgment Against Defendants Doyle and Does 1 through 20

27.    Allumination incorporates by this reference the allegations in paragraphs 1 through 22 as though fully set forth herein.

28.    On September 6, 2007, Doyle, through his counsel, sent Allumination a written notice that purported to terminate the Agreement based on asserted breaches (hereinafter the "Termination Letter").

29.    At no time prior to the date of the Termination Letter did Doyle provide any written notice of breach of the Agreement or indicate in writing his intention to terminate the Agreement.

30.    The Termination Letter did not give Allumination fifteen days to cure the purported breaches.

31.    The Termination Letter was not sent within fifteen days of Doyle becoming aware of the purported breaches.

32.    The breaches asserted by Doyle were not material breaches giving rise to the right to terminate the Agreement, assuming Doyle had any right to terminate the Agreement.

33.    On information and belief, Doyle asserts that his termination of the Agreement was valid and Allumination is in breach of the Agreement by continuing to distribute the Videos after the purported termination date.

STEIN & FLUGGE, LLP
6100 Wilshire Blvd.
Suite 1250
Los Angeles, CA
90048-5107
(323) 936-1455

c:\javier\allumination\complaint

- 6 -

34.     Allumination asserts that Doyle's termination of the Agreement was not valid and that Doyle is in breach of the Agreement and is infringing on Allumination's rights under copyright law by distributing the Videos himself after the purported termination date.

35.     An actual and justiciable controversy exists as to whether the Doyle's purported termination of the Agreement was valid.

## PRAYER FOR RELIEF

WHEREFORE, Allumination prays for the following relief:

## ON THE FIRST CAUSE OF ACTION:

a.     An award of actual damages according to proof;

b.     An accounting of the profits of Defendants;

c.     An award of statutory damages of not less than $30,000 per infringement or, in the event the court finds that the Defendants' infringement is willful, $150,000 per infringement;

d.     An award of Allumination's attorney's fees and costs; and

e.     Such other and further relief as may be just and proper.

## ON THE SECOND CAUSE OF ACTION:

f.     An award of damages according to proof;

g.     An award of Allumination's attorney's fees and costs; and

h.     Such other and further relief as may be just and proper.

## ON THE THIRD CAUSE OF ACTION:

i.     A declaration that: (1) Doyle's termination of the Agreement was invalid and that the Agreement remains in full force and effect; and (2) Doyle's purported license to Alfred is invalid because Allumination and not Doyle had the rights that Doyle purported to grant to Alfred; and

STEIN & FLUGGE, LLP
6100 Wilshire Blvd.
Suite 1250
Los Angeles, CA
90048-5107
(323) 936-1455

c:\javier\allumination\complaint                    - 7 -

COMPLAINT FOR: (1) COPYRIGHT INFRINGEMENT; (2) BREACH OF CONTRACT; and (3) DECLARATORY JUDGMENT

j.     Such other and further relief as may be just and proper.

DATED:  March 7, 2011

STEIN & FLUGGE, LLP

By _____
VALERIE V. FLUGGE
Attorneys for Plaintiff
Allumination Filmworks, LLC

## JURY DEMAND

A jury trial is hereby demanded.

DATED:  March 7, 2011

STEIN & FLUGGE, LLP

By _____
VALERIE V. FLUGGE
Attorneys for Plaintiff
Allumination Filmworks, LLC

STEIN & FLUGGE, LLP
6100 Wilshire Blvd.
Suite 1250
Los Angeles, CA
90048-5107
(323) 936-1455

c:\javier\allumination\complaint

- 8 -

COMPLAINT FOR: (1) COPYRIGHT INFRINGEMENT; (2) BREACH OF CONTRACT; and (3) DECLARATORY JUDGMENT

# AGREEMENT

THIS AGREEMENT is made and entered into as of October 25, 2004, 2004 by and between GREEN MONSTER MUSIC, a California corporation, with offices at 14355 Huston Street, Ste 218, Sherman Oaks, California 91423, attention: John Maurice Doyle ("Licensor"), and ARDUSTRY HOME ENTERTAINMENT, LLC, a Delaware limited liability company with offices at 21250 Califa Street, Ste 102, Woodland Hills, California 91367 ("Licensee"), in connection with the licensing and distribution of the program series specified below pursuant to the terms and conditions of this agreement (the "Agreement"):

1.   PROPERTY: The property that is the subject of this Agreement is the program series, filmed in video, entitled "MONSTER MUSIC METHOD" written, produced and featuring John Maurice Doyle:

      a.   Volume I – Beginner – Novice, 174 minute program, with a 77 minute "Jam Along" CD and notation booklet;

      b.   Volume II – Beginner – Novice, 133 minute program, with a 76 minute "Jam Along" CD and notation booklet;

      c.   Volume III – Novice - Intermediate, 106 minute program, with a 64 minute "Jam Along" CD and notation booklet;

      d.   Volume IV – Intermediate - Advanced, 110 minute program, with a 60 minute "Jam Along" CD and notation booklet; and

      e.   Volume V – Advanced, 123 minute program, with a 62 minute "Jam Along" CD and notation booklet;

      (collectively the "Property").

2.   GRANT OF RIGHTS: Licensor hereby grants, sells, transfers, and assigns to Licensee the exclusive and irrevocable right to reproduce, modify, distribute, publicly perform, exhibit, license, sublicense, lease, rent, sell, promote, advertise, publicize, manufacture, and otherwise exploit the Property for the Term and throughout the Territory, and authorize others to do so, for Video and Merchandising rights as defined herein.  All rights not expressly granted to Licensee are reserved by Licensor, including, but not limited to, Television, Theatrical, Non-theatrical, and Ancillary rights as defined below.

3.   TERRITORY: Worldwide.

4.   TERM: Commencing on the signing of this Agreement and continuing for seven (7) years from the initial release of the Property under this Agreement.  Licensee shall have an exclusive right to sell such videograms during the six (6) month period following the expiration of the term (the "Sell-Off Period").  Contracts in effect at the expiration hereof will continue to their full term.

5.   DEFINITION OF GROSS RECEIPTS: Gross Receipts ("GR") means all monies actually received by Licensee or its subsidiaries from exploitation of the Property less, with respect to Video exploitation of the Property, any returns (or reserve for returns under Paragraph 8,

Green Monster Agmt v05a.doc (12/21/04)


EXHIBIT "A"

"Reserve For Returns", below), refunds, rebates, allowances, credits, discounts, marketing incentives ("MDF's or "Spiffs") and taxes."

6. DISTRIBUTION AND LICENSING: From all GR derived from Licensee's exploitation of its rights under this Agreement, Licensee shall retain a Distribution Fee of Thirty Five Percent (35%) of GR (GR as defined above). Notwithstanding the foregoing, if the Property is re-priced for sell-through at a retail price of Six Dollars ($6.00) or below, the foregoing shall not apply. Instead, Licensee shall pay Licensor a royalty of Ten Percent (10%) of GR.

7. RESERVE FOR RETURNS:

(a) Rental: Licensee shall be entitled to establish and maintain a reserve for bad debts and returns of videograms that shall equal Twenty Percent (20%) of GR, unless (determined in Licensee's good faith business judgement) the dollar amount of outstanding inventory requested to be returned requires a greater reserve. At the end of one (1) year, Licensee will liquidate said reserve, retaining as a reserve the dollar value of actual outstanding inventory, if any, held by third parties.

(b) Sell-Through: For sell-through sales, Licensee shall be entitled to retain as a reserve, Twenty-Five Percent (25%) of sell-through revenue, or the value of the actual distributor inventory of Video products of the Property as determined by physical inventory whichever is less, to be liquidated Twenty-Five Percent (25%) per quarter, one quarter at a time beginning after one (1) year.

8. DISTRIBUTION EXPENSES: Distribution Expenses include all actual, direct, out-of-pocket, third party costs of distribution including without limitation expenses of manufacturing, set-offs, allowances, outside attorneys' fees, design, promotion, marketing, advertising, creation of screening copies, re-mastering or editing for purchasers, postage and delivery, including marketing and design expenses performed by Licensee's Marketing and Creative Art department ("Marketing/ Design Expenses"), provided that such charges are no more than the customary charges by third parties and consistent with industry standards for the work performed, and, if advanced by Licensee, the cost of MPAA Rating Certificate, and title and copyright reports. The MPAA rating costs, and title and copyright report expenses shall not be included in the limitation on Marketing/Design Expenses. Licensor desires to limit certain of Licensee's distribution expenses; the parties agree that Licensee may incur expenses up to the following amounts on each episode of the Property without the prior consent of Licensor (in the event these expenses exceed the pre-determined amount, Licensee will get the prior consent of Licensor, which consent shall not be unreasonably withheld): (a) not more than Fifteen Thousand Dollars ($15,000) for advertising; and (b) not more than Sixteen Thousand Dollars ($16,000) in Marketing/Design Expenses. In addition, Licensee shall be entitled to recoup incentives given to customers ("MDF's" and "Spiffs") or other rebates actually given to Licensee's customers.

9. DISPOSITION OF GR AND RECOUPMENTS: GR, shall be allocated and disbursed as follows and in the following order of priority:

(a) First, Licensee shall retain its Distribution Fee;

(b) Second, Licensee shall recoup its Distribution Expenses;

(c) Third, Licensee shall remit to Licensor an amount equal to all remaining GR less any Minimum Guarantee previously paid to Licensor.

In the event the Licensor is to be paid on a royalty basis, Licensee shall remit to Licensor the Royalty specified in Paragraph 6 above less any Minimum Guarantee previously paid to Licensor.

10. CROSS-COLLATERALIZATION: With respect to its recoupment of Distribution Expenses, Licensee shall be entitled to cross-collateralize GR from any forms of distribution and exploitation under this Agreement.

11. CREDITS: Licensee shall use the credit block provided by Licensor on all promotional and distribution materials and shall comply with all other contractual credit obligations of which Licensee is given timely notice. Licensee shall not alter the copyright ("© 2003 Green Monster Music. All Rights Reserved.") on the Property but may add Licensee's logos in all advertising and promotion as well as videogram packaging. No casual or inadvertent failure by Licensee or any third party to abide by such credit obligation shall be deemed a breach hereof. Licensee shall use reasonable efforts to correct any credit failures on a prospective basis upon written notice from Licensor specifying such failures.

12. LICENSOR PURCHASE OF FINISHED GOODS: Licensor may purchase Videos (in VHS and DVD formats) from Licensee, as follows:

a.  Private Use Units: Solely for the purpose of Licensor's private use and not for resale, and shall be limited to five hundred (500) units in the aggregate during the Term of this Agreement, at Five Dollars ($5.00) per unit, exclusive of shipping costs. If Licensor purchases more than one hundred (100) units in any single purchase, Licensee will assume the cost of shipping. No Royalty will be paid on Videos purchased pursuant to this paragraph.

b.  Licensor Sales: Licensor may purchase, for the purpose of Licensor Sales (as defined in Paragraph 13 below), at Five Dollars ($5.00) per unit (exclusive of shipping costs), for DVDs and VHS units. If Licensor purchases more than one hundred (100) units in any single purchase, Licensee agrees to assume the cost of shipping. No GR will be paid on Videos purchased pursuant to this paragraph.

13. DEFINITIONS:

(a) "Video", as used in this Agreement, includes the right to distribute all or part of the Property by means of videogram devices, including but not limited to video tapes, video cassettes, digital video discs, laser discs, CD-ROMs and any and all devices, including interactive media, for reproducing and embodying a moving image (including the

soundtrack associated with it) whether now known or hereafter to become known, and further including, without limiting the generality of the foregoing, surrogate video delivery via video-on-demand (delivered, without limitation, by fiber optic, telephone, cable, satellite or other electronic, optical or digital signal), and computer online services, the intended for home, institutional and educational use.

(b) "Television", as used in this Agreement, includes the right to transmit, distribute and exhibit all or part of the Property for reception on a television or monitor of any form (or comparable device, now known or hereafter devised) by means of, without limitation, over-the-air broadcast, pay per view, basic and pay cable (including pay hotel and motel exhibition), wire, fiber or any material, satellite, master antenna, microwave, and any other distribution, transmission or exhibition technology now known or hereafter to become known, the intended for home, institutional and educational reception.

(c) "Theatrical", as used in this Agreement, includes the right to distribute the Property for screening directly before an audience on a regularly scheduled basis where a fee is charged for admission in a motion picture theater.

(d) "Non-theatrical", as used in this Agreement, includes the distribution and exploitation of the Property for institutional exhibition including but not limited to schools, colleges, and other educational institutions, libraries, museums, film clubs and societies, churches and other religiously oriented groups, hospitals, retirement centers, prisons, summer camps, remote construction, drilling and logging camps, hotels, business and service organizations and clubs, means of transportation (including without limitation aircraft, trains, ships at sea, and other common carriers), governmental agencies, diplomatic embassies, Army, Navy, Air Force and other military or armed services installations (whether permanent or temporary), and other institutions that typically license recorded entertainment materials from programming suppliers.

(e) "Ancillary Rights", as used in this Agreement, includes but is not limited to, print publication, novelization, soundtrack, computer assisted media, film clip rights, and the concept, characters, and situations embodied in the screenplay of the Property.

(f) "Merchandising Rights", as used in this Agreement, includes the right to manufacture, sell, license, advertise, promote, furnish, supply and distribute products, buy products, services, facilities, merchandise and commodities of every nature and description, including, without limitation, such product categories as video games, artwork, toys, games, items of wearing apparel, food, beverages and similar items that make reference to or are based upon or adapted from the Property or any part thereof (including the title thereof).

(g) "Licensor Sales", as used in this Agreement, includes the following:

(1)    Specialty Sales: Licensor retains the non-exclusive right to sell the Property to "core" retail stores (defined as independent music stores) and at consumer

> specialty music events, provided such sales are handled by Licensor and not by any third party distributor(s).

(2)   Internet Sales: Licensor retains the non-exclusive right to sell the Property exclusively via its own web site.

(3)   Licensor agrees to purchase the Property from Licensee pursuant to Paragraph 12. above.

14. INCIDENTAL RIGHTS: Without limiting the generality of the foregoing, the rights granted Licensee include:

(a)  Editing of the Property: Subject to Licensor approval, to edit, modify, cut, add, or revise the Property for content, format, rating or time and recoup the reasonable and verifiable costs thereof as a Distribution Expense. In the event that Licensee deems it necessary to re-edit the Property for exploitation in its Territory, Licensor shall be given the first opportunity to make the requested changes.

(b)  Titles: To use the current title of the Property or to use any other title, with Licensor's prior approval.

(c)  Foreign Language Versions: To dub and/or subtitle the Property in all languages for use in such parts of the Territory as Licensee may determine in its sole discretion.

(d)  Advertising and Publicity: To advertise, promote and publicize the Property in any and all media now known or hereafter devised or authorize others to do so. Such advertising, promotion and publicity may include synopses or excerpts of the Property, use of all characters, situations, objects, properties, designs, equipment or events depicted or described in the Property and use of all preexisting advertisements, publicity pieces and promotional materials, in whole or in part, for the Property. Licensee shall also have the right to use or exhibit the Property, or portions thereof, in connection with advertising, promoting, publicizing or demonstrating the Property.

(e)  Names, Pictures, Voice, Likeness: To reproduce, publish, disseminate in any medium, or otherwise use in connection with the exploitation of any of the rights granted under this Agreement, the name, portrait, picture, likeness and voice of anyone rendering services in and/or in connection with the Property and biographical material concerning such persons.

(f)  Use of Names and Logos: To use such names, logos, or trademarks as depicted in the Property.

(g)  Film Clip Rights: To license film clips from the Property, and divide the net proceeds equally with Licensor.

15. DISTRIBUTION OF SUBSEQUENT PRODUCTIONS: Licensor grants Licensee the right of first negotiation and last refusal in connection with the distribution of productions of any remakes, serials, sequels, and similar or related depictions or stories based upon the Property

and on no less than the same terms and conditions as provided herein. Licensor and Licensee agree to so negotiate in good faith for a period of thirty (30) days following commencement of said negotiations. In the event no agreement is reached within such period, Licensor may negotiate with other parties, provided that if Licensor is prepared to accept a bona fide offer from a third party for the licensing of distribution rights to such remakes, serials, sequels, or spinoffs to such third party, Licensor will, before entering into such agreement, give Licensee notice of the proposed terms thereof. In such instance, Licensee will then have ten (10) days in which to elect to acquire said rights on the terms contained in the notice.

16. REPRESENTATIONS AND WARRANTIES: Licensor represents and warrants that:

(a) It has all the rights and authority necessary to enter into this Agreement and perform all of its obligations hereunder and grant all rights herein granted;

(b) It has not taken and will not take or permit any action by which any of the rights granted herein have been or may be in any way impaired;

(c) Nothing contained in the Property or in ancillary material to be supplied to Licensee hereunder, and no exercise of any rights granted hereunder, will violate or infringe upon the rights of any person or entity or result in any other liability;

(d) It owns or controls, and grants to Licensee hereunder, all the rights in the musical compositions contained in each Property that are required in connection with the exploitation of the Property in accordance with this Agreement (including, without limitation, performance rights), except to the extent that the non-dramatic performance rights are controlled by ASCAP, SESAC or BMI or are in the public domain;

(e) It owns and/or controls the necessary rights to authorize the exhibition, distribution, advertising, publicizing, promotion and other exploitation of the Property hereunder in the manner and form contemplated by this Agreement, except non-dramatic performance rights in the public domain. Without limiting the generality of the foregoing, Licensor has obtained all of the rights, permissions and licenses required to grant the rights granted herein and to enable Licensee to fully exploit the Property hereunder, including without limitation the right to use performers' names, images, likenesses and biographies to advertise, publicize, and promote such Property, subject only to such credit requirements (if any) as to which Licensee shall be notified in writing upon execution of this Agreement;

(f) It shall, at its own expense, take or cause to be taken all steps necessary and/or desirable to secure and maintain U.S. copyright protection for the Property hereunder;

(g) It has paid or will pay all amounts that have been or may become payable in connection with the Property hereunder or the exercise of any and all rights granted herein there are no pending claims, liens, charges, restrictions or encumbrances on the Property or any portion thereof or on the exercise of such rights, nor shall there be any in the future;

(h) It has paid or will be responsible for making all payments that may become due to any union or guild and to any person or persons who rendered services in or in connection with the production of the Property by virtue of the use made of the Property hereunder, including without limitation, all residual, reuse, rerun, pension and health and welfare fund, and payroll tax payments;

(i) Under all agreements executed by Licensor involving the granting of credit, the sole remedy available with respect to any dispute involving credits is an action for damages, and that no aggrieved party may seek injunctive relief in connection with such dispute.

17. RATING: The parties acknowledge that the Property is not currently rated by the MPAA, and likely will be distributed without an MPAA rating (the "Rating"). If Licensee determines that an MPAA is desirable, Licensee will obtain the Rating and pay the costs thereof, and such costs shall be recoupable as a Distribution Expense. Licensor will fully cooperate with Licensee in Licensee's application to the MPAA for the Rating, including making such changes in the Property as are deemed necessary to obtain a rating no more restrictive than "PG".

18. DELIVERY: Licensor shall supply Licensee the following satisfactory materials for use in the manufacturing, duplicating and advertising of the Property (the "Delivery Materials"), including, but not limited to, the following:

(a) Film Master: One (1) NTSC D1 or Digital Betacam master videotape stereo version of the Property, with digital sound and with separate dialogue, music and effects tracts; and one (1) VHS copy of the Master;

(b) DA-88 audio tape of separated dialogue, music and effects with time code synched to picture, if available;

(c) Final, approved: credit block, complete opening and end credits, and copies of all contracts (or excerpts) with additional contractual credit requirements and any restriction or obligations of any persons rendering services on the Property with regard to name, image and/or likeness in any paid advertising, publicity or exploitation of the Property;

(d) Synopsis of the Property;

(e) English language script of the Property;

(f) Key art used in promotion and/or release of the Property, if available;

(g) Press and promotional materials, as available;

(h) Trade reviews of the Property, as available;

(i)  All available color images on a CD rom in not less than 300 dpi resolution suitable for use in packaging and advertising that are a representative selection of the program, of suitable quality for full color reproduction on packaging and marketing materials;

(j)  Camera ready black and white and color art work of Licensor's logo, if available;

(k)  Lab access letters for right to access the Film Master and the audio track elements (attached hereto as Exhibit "B");

(l)  Full chain of title, as set for in paragraph 19 below.

Delivery Materials should be delivered to Sean McGillan at 21250 Califa Street, Ste 102, Woodland Hills, CA 91367, (818) 712.9000.

If Licensor fails or is unable to make timely delivery of any of the foregoing Delivery Materials, Licensee shall have the right to create or obtain such Materials and recoup the cost thereof as a Distribution Expense under this Agreement.  Such recoupable Distribution Expense not being included in the limitation on distribution Expenses referenced under paragraph 8 hereof.  Notwithstanding the foregoing, Licensor's failure to make delivery as provided in this Section shall entitle Licensee to terminate this Agreement, as well as to resort to all other legal and equitable remedies under this Agreement.  Licensor shall have fifteen (15) days from the notification of a deficiency in making delivery hereunder to provide such Delivery Materials to Licensee.

Licensor agrees to provide in a timely fashion any additional materials reasonably requested by Licensee that are required by third parties for the exploitation of the Property and that are reasonable and customary delivery materials within the industry.

19.  CREATIVE WORK DONE BY LICENSEE:  Licensee shall retain possession to any marketing materials created by Licensee during the Term hereof including any foreign language tracks; thereafter, Licensor shall own such materials.  Licensee shall give full access to Licensor of any marketing materials and master digital video (including screening copies) and sound versions created during the Term of this Agreement, in connection with all rights and in all territories retained by Licensee, and Licensor shall pay Licensee (or its designee) for the cost of duplication and/or shipping costs related thereto. Licensor may freely use such materials during the Term in those territories reserved by Licensor, and upon the conclusion of the Term, in all territories and all media.

20.  CHAIN OF TITLE:  Licensor's delivery of the chain of title to the Property is a condition precedent to all of Licensee's obligations hereunder.  Chain of title includes but is not limited to:

(a)  Short Form Assignment:  One (1) original Short Form Assignment attached hereto as Exhibit "A", evidencing the assignment of distribution rights in the Property from Licensor to Licensee;

(b) Copyright Certificate: Copy of the U.S. Copyright Registration Certificate (stamped by the U.S. Copyright Office) for the Property. If the copyright certificate has not yet been received from the Library of Congress, then Licensor shall deliver a copy of the PA Form and cover letter, date stamped "Received" by the U.S. Copyright Office, and a copy of the canceled check that accompanied the PA Form;

(c) Certificates of Authorship or Copyright Assignments to Licensor from the creators or rights-holders of the underlying intellectual property (e.g., book, screenplay, life story, etc.) on which the Property is based;

(d) Title Report: One (1) current title report showing that the title of the Property is available for use without infringing any other person or entity's rights; and

(e) Copyright Report: One (1) current copyright report showing that Licensor has clear title to the Property and all underlying rights.

Licensee will order and advance the cost of the title and copyright reports; such cost will be recoupable by Licensee as a Distribution Expense pursuant to paragraph 8 above.

21. INSURANCE:  If Licensor, at its sole cost and expense, purchases an Errors and Omissions policy of insurance with respect to the Property, the policy will have limits of not less than $1,000,000/$3,000,000, with a deductible of not more than $10,000, and name Licensee as an additional insured on said policy. Licensee acknowledges and agrees that Licensor is not required to carry an Errors and Omissions insurance police with respect to the Property hereunder.

22. REPORTING AND PAYMENTS:  Licensee will render, or cause to be rendered, to Licensor quarterly accounting statements and payments if due, following the initial release of the Property, within sixty (60) days of the last day of the respective quarterly calendar accounting period. During the second and third years of the Term hereof, such accounting statements and payments shall be rendered, or caused to be rendered, semi-annually; thereafter, such accounting statements and payments shall be rendered, or caused to be rendered, annually. The first such accounting period for which reporting is required hereunder is that quarter within which the Street Date of the Property falls. All monies due and payable to Licensor pursuant to this Agreement will be paid to Licensor simultaneously with the rendering of the accounting statement.

23. AUDIT RIGHTS: Accounting records relating to the Property shall be maintained at Licensee's offices and shall be available for audit on one month's notice, at reasonable times during business hours, to a duly authorized person or firm acting on behalf of Licensor.  Said audit rights shall not be exercised more than once in any twelve (12) month period, and only with respect to new activity reflected in statements received by Licensor one (1) year prior to the commencement of the audit.

24. INSTRUMENTS OF FURTHER ASSURANCE: Each party shall execute and deliver to the other party, promptly upon the request of the other party therefore, any other instruments or

documents reasonably considered by the other party to be necessary or desirable to evidence, effectuate or confirm this Agreement, or any of its terms and conditions.

25. BREACH: Licensee shall have the right to suspend the payment of any monies due Licensor if Licensor is in material breach of any of its representations, warranties or agreements pursuant to this Agreement. If either party alleges a breach by the other party, a written notice shall be sent by the non-breaching party to the allegedly breaching party within fifteen (15) days of the non-breaching party becoming aware of such alleged breach. If breach is not cured within a fifteen (15) day period from date of receipt of notice, the breaching party shall be in default hereof. If the breach is not susceptible of being cured, no waiting period for cure shall be required. In the event of an uncured or uncureable material breach, the non-breaching party shall be entitled to terminate this Agreement by written notice to the other party, which may include, in the case of Licensor, regaining the rights granted hereunder in the Property, subject to existing executory contracts and licenses with respect the Property, and in the case of Licensee, terminating this Agreement and invoicing Licensor for all expenses incurred by Licensee on the Property up to the date of termination.

26. INDEMNIFICATIONS: Each party (the "Indemnifying Party") shall defend, indemnify and hold the other party, its affiliates and their respective employees, officers, agents, attorneys, stockholders and directors, and their respective successors, licensees and assigns ("Indemnified Parties") harmless from and against, and shall pay as incurred, any and all claims, proceedings, actions, damages, costs, expenses (including reasonable attorney's fees and court costs) and other liabilities and losses of whatever kind or nature ("Claim(s)") incurred by, threatened against, imposed or filed against any Indemnified Party caused by any breach or alleged breach by the Indemnifying Party of any representation, material term, warranty or agreement hereunder. Neither party shall settle, compromise or consent to the entry of judgement in or otherwise seek to terminate any pending or threatened Claim without the written consent of the other party, such consent not to be unreasonably withheld or delayed.

27. NOTICES: Any and all notices, communications, and demands required or desired to be given hereunder by either party hereto shall be in writing and shall be validly given or made if served personally, by an overnight delivery service with receipt therefore or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested. If such notice or demand is served personally, service shall be conclusively deemed made on the same day as reflected on the receipt therefore (or if such day is not a business day, then the next business day); if by an overnight delivery service, on the date of the receipt therefore; and if by certified or registered mail in the manner above provided, on the date that the receipt indicates that delivery was made. To be effective, any service hereunder shall be to the addresses and individuals set forth below:

If to Licensor:
Green Monster Music
14355 Huston Street, Ste 218
Sherman Oaks, California 91423
Telephone: 818.783.6581
Facsimile:
Attention: John Maurice Doyle
Email: jmd@greenmonstermusic.com

If to Licensee:
Ardustry Home Entertainment, LLC
21250 Califa Street
Woodland Hills, CA 91367
Telephone: (818) 712.9000
Facsimile: (818) 712.9070
Attention: Business Affairs

Green Monster Agmt v05a.doc (12/21/04)                    10

28. NO JOINT VENTURE: Nothing herein contained shall be construed to create a partnership between the parties. Neither of the parties shall hold itself out contrary to the terms of this provision, nor shall either party be bound or become liable for any representations, actions, or omissions of the other.

29. KEYMAN: Licensee acknowledges that Licensor deems the provision by Licensee of Cheryl A. Freeman ("Freeman") as the CEO of Licensee and Jerry Smallwood ("Smallwood") as the VP of Sales during the Term of this Agreement as of the essence of this Agreement and a material inducement to Licensor entering into this Agreement. In the event Freeman or Smallwood is no longer employed by Licensee or either is unable to render services hereunder for any period of time during the Term, Licensee will recommend a replacement. Licensor shall have the right, exercisable in its sole and absolute discretion, to approve any individual submitted by Licensee as Freeman's or Smallwood's replacement. In the event Licensor does not approve the replacement in writing, Licensor may, in its sole discretion, terminate this Agreement.

30. ASSIGNMENT: Licensee may assign this Agreement to and/or may distribute the Property through any of its subsidiaries, parents or affiliated companies or any agent, instrumentality or other means determined by Licensee (as well as collaterally assign to Licensee's lender all of Licensee's interest in and/or arising out of this Agreement) provided that Licensee shall not thereby be relieved of its obligations hereunder, or to any entity or individual with which Licensee is merged or consolidated or by which Licensee is acquired, and provided such assignee accepts Licensee's obligations hereunder in writing. This Agreement shall be otherwise non-assignable.

31. REMEDIES: No breach of this Agreement shall entitle Licensor to terminate or rescind the rights granted to Licensee herein, and Licensor hereby waives the right, in the event of any such breach, to equitable relief or to enjoin, restrain or interfere with the distribution, exploitation, exhibition or use of any of the rights granted herein, it being understood that Licensor's sole remedy shall be the right to recover money damages with respect to any such breach. In any legal action between the parties for breach, or any action between the parties otherwise related to this Agreement, the prevailing party shall be entitled to its attorneys' fees.

32. UNAUTHORIZED USE: Licensee may in its own name, or in the name of the copyright proprietor or otherwise, take such steps as Licensee reasonably deems appropriate by action at law or otherwise, to prevent any unauthorized reproductions, exhibition or distribution of the Property, or any infringement of the copyright on the Property or to prevent any impairment of, encumbrance on, or infringement upon the rights of Licensor or Licensee under this Agreement.

33. GOVERNING LAW: This Agreement, its validity, construction and effect, shall be governed by and construed under the laws of the State of California without regard to conflict of law principles. All disputes arising out of this Agreement shall be resolved and adjudicated in the Federal, State or City Courts located in Los Angeles, California. Each of

the parties hereto hereby submits to the jurisdiction and venue of said courts and waives its rights to have disputes arising out of this Agreement adjudicated in any other forum.

34. CUMULATIVE REMEDIES: All remedies, rights, undertaking, obligations, and agreements contained in this Agreement shall be cumulative and, except as provided expressly herein, none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either party.

35. CONFORMITY: Nothing in this Agreement shall be construed so as to require any illegal act. Any conflict between any provision hereof and any law or requirement with the force of law shall be restricted to the extent necessary to bring it within the applicable requirements. Any invalid provision(s) hereof shall be severed, and of no effect, and the remaining provisions shall continue in full force and effect, as if the invalid provision(s) had never been contained herein.

36. CONSTRUCTION: This Agreement has been entered into after negotiation and review of its terms and conditions by parties with substantially equal bargaining power and under no compulsion to execute and deliver a disadvantageous agreement. The Agreement incorporates provisions, comments and suggestions proposed by both parties. No ambiguity or omission in this Agreement shall be construed or resolved against a party on the ground that this Agreement or any of its provisions was drafted or proposed by that party.

37. NO WAIVER: No express or implied waiver by either party of any provision of this Agreement or of any breach or default of the other party shall constitute a continuing waiver, and no waiver by either party shall prevent such party from enforcing any and all other provisions of this Agreement or from acting upon the same or any other or subsequent breach or default of the other party.

38. COMPLETE AGREEMENT: This Agreement represents the complete agreement of the parties, superseding any and all prior understandings and agreements with respect to the subject matter hereto. It shall not be modified except by written instrument signed by both parties. The representations, warranties and indemnities herein shall survive the termination, execution, completion or expiration of this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed on the day and year first written above.

GREEN MONSTER MUSIC                    ARDUSTRY HOME ENTERTAINMENT, LLC.
("Licensor")                           ("Licensee")

By: _____            By: _____
Name: John Maurice Doyle                     Cheryl A. Freeman
Title: President / Owner                Title: Chief Executive Officer
Tax ID No. 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

Exhibit "A"

Short Form License

For good and valuable consideration, the receipt of which is hereby acknowledged, the undersigned, Green Monster Music ("Licensor") hereby exclusively license and set over under copyright unto ARDUSTRY HOME ENTERTAINMENT, LLC ("Licensee") and its successors and assigns, in the Video rights, for a period of seven (7) years, in the distribution territory consisting of the world (the "Territory") including, without limitation, the copyright, in the program series, filmed in video, entitled "MONSTER MUSIC METHOD" written, produced and featuring John Maurice Doyle, specifically: Volume I – Beginner – Novice, 174 minute program, with a 77 minute "Jam Along" CD and notation booklet; Volume II – Beginner – Novice, 133 minute program, with a 76 minute "Jam Along" CD and notation booklet; Volume III – Novice - Intermediate, 106 minute program, with a 64 minute "Jam Along" CD and notation booklet; Volume IV – Intermediate - Advanced, 110 minute program, with a 60 minute "Jam Along" CD and notation booklet; and Volume V – Advanced, 123 minute program, with a 62 minute "Jam Along" CD and notation booklet; (collectively the "Work"), as more particularly set forth in the terms and conditions of that certain Agreement between the parties referenced below.

Licensor hereby agrees to obtain or cause to be obtained all United States copyrights in and to the Work, whether or not referred to herein; should the undersigned fail to do the foregoing, the Licensor hereby irrevocably appoints Licensee as the Licensor's attorney-in-fact, with full and irrevocable power and authority to do all such acts and things, and to execute, acknowledge, deliver, file, register and record all such documents, in the name and on behalf of the Licensor, as Licensee may deem necessary or proper in the premises to accomplish the same.

Licensee also is hereby empowered to bring, prosecute, defend and appear in suits, actions and proceedings of any nature under and concerning all copyrights in and to said Work and all renewals thereof, or concerning any infringement thereof, or interference with any of the rights hereby granted under said copyrights or renewals thereof, in its own name or in the name of the copyright proprietor, but at the expense of Licensee, and, at its option, as a party plaintiff or defendant in any such suit, action or proceeding.

This License Agreement is executed in accordance with and is subject to the terms and provisions of that certain formal license agreement dated as of October 25, 2004 (the "Agreement") entered into between Licensor and Licensee relating to the transfer and license of the foregoing rights in and to said Work which rights are more fully described in said Agreement, and this Short Form License is expressly made subject to all of the terms, conditions and provisions contained in said Agreement. In the event of any inconsistency between said Agreement and this Short Form License, the Agreement shall be controlling.

IN WITNESS WHEREOF, the undersigned has executed this license on this 23 day of Dec , 2004.

GREEN MONSTER MUSIC

By: _____
        Authorized Signatory

ARDUSTRY HOME ENTERTAINMENT LLC

By: _____
        Authorized Signatory

Green Monster Agmt v05a.doc (12/21/04)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Paul Abrams.

The case number on all documents filed with the Court should read as follows:

## CV11- 1945 MMM (PLAx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [_] Southern Division | [_] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Valerie V. Flugge
Stein & Flugge, LLP
6100 Wilshire Blvd., Suite 1250
Los Angeles, CA 90048
(323) 936-1455

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Allumination Filmworks, LLC,
a Delaware Limited Liability Company,

PLAINTIFF(S)

v.

John Maurice Doyle, Alfred Publishing Co., Inc.,
a New York Corporation, and
Does 1 - 20

DEFENDANT(S).

CASE NUMBER

CV11-01945 MMM(PLAx)

SUMMONS

TO:   DEFENDANT(S): John Maurice Doyle, Alfred Publishing Co., Inc., and Does 1-20

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Valerie V. Flugge, Esq. _____, whose address is 6100 Wilshire Blvd., Suite 1250, Los Angeles, CA 90048 _____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:   MAR - 7 2011 _____

By: _____
Deputy Clerk

(Seal of the Court)

[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].

CV-01A (12/07)                         SUMMONS

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Allumination Filmworks, LLC | John Maurice Doyle, Alfred Publishing Co., Inc., and Does 1-20 |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Valerie V. Flugge<br>Stein & Flugge, LLP<br>6100 Wilshire Blvd., Suite 1250, Los Angeles, CA 90048 (323) 936-1455 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:    JURY DEMAND:** ☑ Yes    ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION** under F.R.C.P. 23: ☐ Yes    ☑ No    ☐ MONEY DEMANDED IN COMPLAINT: $ According to proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☑ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

# CV11-01945

**FOR OFFICE USE ONLY:**    Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)    CIVIL COVER SHEET    Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:**  Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐    Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐    Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER):  _Valerie V. Flugge_   Date  March 7, 2011

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |